## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CONSUMER PROGRAM ADMINISTRATORS, )
INC., an Illinois corporation, )
                                 )
      Plaintiff, )
                                 )     No.   07 C _____
v. )
                                 )
SHASHI K. TEJPAUL, a Michigan citizen, and )
GAIL M. DUNCAN, a Michigan citizen, )
                                 )
      Defendants. )

### PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT UNDER COUNT I

NOW COMES, CONSUMER PROGRAM ADMINISTRATORS, INC., an Illinois

corporation ("Plaintiff" or "CPA"), by and through its attorneys, Freeborn & Peters LLP, and for its

Motion For Judgment Under Count I ("Motion") against Defendants SHASHI K. TEJPAUL

("Tejpaul") and GAIL M. DUNCAN ("Duncan"), (collectively, "Defendants" or "Obligors"), states

as follows:

1.     Plaintiff filed its Complaint in this action to seek redress for Defendants' default and

material breach of contractual terms contained in a Forbearance, Payment and Release Agreement

("Agreement"). The Agreement is attached hereto as Exhibit A and incorporated herein. Plaintiff

and Defendants entered into the Agreement to settle a lawsuit previously brought by Plaintiff in this

Court because of Defendants' defaults under a Promissory Note ("Note"). The Note is attached

hereto as Exhibit B and incorporated herein.

2.     Defendants materially breached, and defaulted under, the clear and plain terms of

the Agreement by failing pay all unpaid costs, principal and interest on September 15, 2007. (*See*

Agreement, Exh. A attached hereto, at § 3, pp. 2) (requiring that "all unpaid costs, principal and

interest shall be due and payable on September 15, 2007"); *id.* at p. 3 (defining an "Event of Default" as "any failure to pay any amounts on this Agreement or any other Obligation when due or breach of any other terms or conditions herein").

3.      The Agreement listed the rights and remedies available to Plaintiff because of an Event of Default. "Upon the occurrence of a default hereunder, (a) at the option of CPA, all unpaid amounts under this Agreement or under any other Obligations shall become immediately due and payable without demand, notice or legal process of any kind; (b) the amount of $22,702.92 for attorneys' fees and costs incurred by the law firm of Drinker Biddle & Reath LLP shall be added to the unpaid amounts and shall become immediately due and payable without demand, notice or legal process of any kind; (c) the accrued default interest of $105,501.07 (the difference between the 18% default rate and the prime plus 1% rate from September 2, 2005 to August 1, 2006 under the Note) shall be added to the unpaid amounts and shall become immediately due and payable without demand, notice or legal process of any kind; (d) CPA may, subject to the notice provision set forth .above, exercise any and all rights and remedies granted to it by this Agreement and the Note, or by any other agreement now or hereafter existing between CPA and Obligors; and (e) CPA may, at its option, exercise from time to time any other rights and remedies available to it under applicable law." (Agreement, Exh. A attached hereto, at § 3, pp. 3-4.)

4.      The Agreement also required Obligor to pay Plaintiff "on demand therefor, all costs, including reasonable attorneys' fees, incurred in enforcing this Agreement and the Note or the rights and remedies herein provided." (Agreement, Exh. A attached hereto, at § 3, p. 5.) Plaintiff has incurred, and continues to incur, attorneys' fees to collect the amounts due under the Agreement.

2

5.    On or around September 17, 2007, Plaintiff provided Defendants with proper and timely notice of the Event of Default and an opportunity to cure. (*See* 9/17/07 Letter from Plaintiff to Defendants, a true and correct copy of which is attached hereto as Exhibit C and incorporated herein.) Defendants, however, failed to cure the Event of Default by paying all unpaid costs, principal and interest owed under the Agreement.

6.    The Agreement provided for a confession of judgment. "*Each Obligor hereby authorizes any attorney to appear for that Obligor in any court of record in the County of Cook, State of Illinois, after this obligation becomes due and waive the issuance and service of process and confess a judgment against each Obligor in favor of the Holder for the amount due under this Agreement plus interest as provided herein together with the cost of suit plus attorney's fees.* Each Obligor hereby expressly waives stay of execution and the exemption of personal property from levy and sale on any execution." (Agreement, Exh. A attached hereto, at § 3, p. 4) (emphasis supplied).

7.    As of this date, there is due and owing from Defendants: (a) the amount of $1,170,207.15 consisting of principal and interest owed under the Agreement as of September 15, 2007; (b) the amount of $22,702.92 for attorneys' fees and costs incurred by the law firm of Drinker Biddle & Reath LLP; and (c) accrued default interest of $105,501.07 (the difference between the 18% default rate and the prime plus 1% rate from September 2, 2005 to August 1, 2006 under the Note). The total of those amounts is $1,298,411.14.

8.    Plaintiff has satisfied all of its obligations and conditions precedent required of it in order to enforce the Agreement.

9.    Defendants are not entitled to any credits or setoffs regarding the amounts specific amounts owed as set forth in the preceding paragraph.

10.    Plaintiff is filing an affidavit supporting this Motion – the Affidavit of William J. Sparer ("Sparer Affidavit"), which is attached hereto as Exhibit D and incorporated by reference herein. The Sparer Affidavit testifies and certifies, under penalty of perjury, that the statements set forth in the Complaint and this Motion are true and correct, except as to matters therein to be on information and belief, and as to such matters Mr. Sparer testifies and certifies as aforesaid that he verily believes the same to be true.

11.    As stated in the Sparer Affidavit, Mr. Sparer, himself as well as by and through the undersigned counsel, hereby appears for the Obligors in this Court after Defendants' obligation became due; waives the issuance and service of process; and confesses that there is due from Defendants: (a) the amount of $1,170,207.15 consisting of principal and interest owed under the Agreement as of September 15, 2007; (b) the amount of $22,702.92 for attorneys' fees and costs incurred by the law firm of Drinker Biddle & Reath LLP; and (c) accrued default interest of $105,501.07 (the difference between the 18% default rate and the prime plus 1% rate from September 2, 2005 to August 1, 2006 under the Note). The total amount due from Defendants is $1,298,411.14. Mr. Sparer also agrees that judgment may be entered without process for the total above and costs of suit, and he releases and waives all rights of Defendants as authorized in the Agreement.

12.    Plaintiff will be filing an affidavit for fees and costs incurred in this action upon entry of judgment by confession against Defendants.

WHEREFORE, CONSUMER PROGRAM ADMINISTRATORS, INC. respectfully requests that the Court enter judgment in its favor on Count I and against SHASHI K. TEJPAUL and GAIL M. DUNCAN, who are jointly and severally, in the amount of $1,298,411.14, plus costs

incurred in connection with the enforcement of Plaintiff's rights under the terms of the Agreement,

including attorneys' fees, as well as any other and further relief as this Court deems just.

Respectfully submitted,

**CONSUMER PROGRAM ADMINISTRATORS, INC.**
**Plaintiff**

BY: _____
One of Its Attorneys

Dated: September 24, 2007

William N. Howard, Esq.
   Atty. No. 6190114
Hillard M. Sterling, Esq.
   Atty. No. 6232655
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
(312) 360-6000

#1403978v1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, being duly sworn on oath, hereby certifies that he caused a copy of the foregoing **Plaintiff's Motion for Entry of Judgment Under Count I** to be served on the parties below via facsimile and overnight mail before the hour of 5:00 p.m. this 24th day of September, 2007:

> Shashi K. Tejpaul
> Gail M. Duncan
> c/o Scott D. Braun
> Sedgwick, Detert, Moran & Arnold, LLP
> Suite 4200
> One North Wacker Drive
> Chicago, IL 60606

Hillard M. Sterling

# EXHIBIT A

## FORBEARANCE, PAYMENT AND RELEASE AGREEMENT

This is a Forbearance, Payment and Release Agreement, ("Agreement") dated this _8_ day of August, 2006, and made by and between Consumer Program Administrators, Inc., an Illinois corporation (hereinafter "CPA"), and Shashi K. Tejpaul, a/k/a S.K. Paul (hereinafter "Tejpaul") and Gail M. Duncan (hereinafter "Duncan") (hereinafter collectively "Obligors").

WHEREAS, Tejpaul and Duncan executed a Promissory Note dated June 15, 2004 (hereinafter "Note");

WHEREAS, under the Note, the Obligors jointly and severally agreed among other things to pay CPA $1,200,000.00 with interest thereon agreed to by the parties;

WHEREAS, pursuant to the Note, the insolvency or the filing of a petition in bankruptcy by or against any of the Dealerships listed in the Note ("Dealerships") constituted a default by the Obligors under the Note;

WHEREAS, a lawsuit was filed in the United States District Court for the Northern District of Illinois styled *Consumer Program Administrators v. Shashi K. Tejpaul, a/k/a S.K. Paul, Gail M. Duncan, Minority Enterprises, LLC d/b/a Sterling Kia and d/b/a Sterling Hyundai, a Michigan corporation, and Sterling Motors, LLC d/b/a Sterling Mazda-Woodhaven and d/b/a Sterling Mazda, a Michigan corporation*, Case No. 05 C 6833, ("Complaint") involving the alleged breach of the Note;

WHEREAS, the parties hereto, with benefit of counsel, have had ongoing discussions to negotiate a mutually agreeable settlement of their differences and have determined that it is in their respective best interest to resolve the disputes between them, to avoid further litigation, and eliminate additional costs, inconvenience and the risk associated with litigation;

NOW, THEREFORE, for good and valuable consideration, including the matters described in the foregoing Recitals, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, CPA and the Obligors agree as follows:

1.      Recitals. The Recitals set forth above shall be incorporated and made a part of the covenants of this Agreement.

2.      Ratification of Obligations. Obligors ratify and reaffirm the following obligations to CPA (the "Ratified Obligations") without setoff, defense, or counterclaim:

        a.      All the obligations contained in the Note as modified herein.

        b.      An obligation to pay CPA under the Note as modified herein.

1

3.    Settlement Terms.

In exchange for CPA's dismissal of Complaint, Tejpaul and Duncan, jointly and severally agree to pay to the order of Consumer Program Administrators, Inc., the principal sum of ONE MILLION TWO HUNDRED SEVENTY THOUSAND SIX HUNDRED SIXTY DOLLARS ($1,270,660.00) with interest from the date hereof on the principal balance outstanding from time to time until this indebtedness ("Note") is paid in full, computed on the basis of a 360-day year for the actual number of days elapsed, at a percentage rate per annum equal to the Prime Rate of interest published from time to time in the Wall Street Journal plus 1%. Said principal, interest and any costs accrued hereunder, including any costs associated with the preparation or administration of this Agreement, shall be due and payable at the office of Lender, 1000 North Milwaukee Ave., Glenview, Illinois 60025, or at such other place as the Holder (as defined below) may in writing designate.

Payments on this Agreement shall be made as follows:

> (i) Obligors shall pay or cause to be paid monthly payments in the amount of $15,000.00 on the fifteenth day of each month beginning with the first payment to be made on or before August 10, 2006 until this Agreement is paid in full. These payments shall be credited upon receipt of good funds and shall be applied first to accrued but unpaid interest and costs due under the Note, then to principal; and

> (ii) if not paid sooner, all unpaid costs, principal and interest shall be due and payable on September 15, 2007.

Obligors may at any time pay the entire principal sum or any part thereof, together with any interest accrued, without penalty. Partial prepayments shall be applied to reduce the payment due on September 15, 2007 and shall not reduce the monthly payments due until all amounts under this Agreement have been paid in full.

As further consideration, Obligors hereby unconditionally and irrevocably guarantee payment when due of any amounts owed to CPA or its affiliates by the Dealerships or to any of their successors or assigns, without the necessity of CPA or its affiliates first bringing legal action against any Dealership or any other party. Each Obligor shall continue to indemnify and hold CPA, its affiliates and their officers, directors, employees and agents harmless from all loss, cost, damage or expense, including attorney's fees, incurred by any of them and arising out of or in any way related to any of the transactions described herein, including but not limited to, the prior application of fees to partially repay the Note. When used herein, "Obligation" means the Note, this guaranty, and this indemnity. CPA may assign this Agreement and all related agreements to any affiliate of CPA and any assignee of this Agreement is sometimes referred to herein as "Holder." This Obligation shall survive Obligors' repayment of this Agreement and the Note.

The occurrence of any one of the following events shall constitute an "Event of Default" by Obligors under this Agreement:

2

(i) any failure to pay any amount on this Agreement or any other Obligation when due or breach of any other terms or conditions herein; or

(ii) if any application or statement in respect hereof furnished to CPA by any Obligor shall be found to be materially false and CPA has notified Obligor of such default; or

(iii) upon request by Lender, the failure of Obligor to provide any financial statement or other information to Lender.

If any Event of Default shall occur and be continuing, CPA may pursue any remedy available to them under this Agreement, the Note, or any other remedy available at law or in equity, including, but not limited to, seeking damages, specific performance and an injunction. However, CPA shall provide written notice of any Event of Default, and allow Obligors five (5) days to cure any such Event of Default, before CPA pursues the remedies described herein. Notice of an Event of Default must be given via certified mail or facsimile to:

> S.K. Paul/Gail Duncan
> 147 N. Lane
> Rochester, MI 48307
> Facsimile: 248-928-0866
> - or -
> Sedgwick, Detert, Moran & Arnold, LLP
> Attn: Scott D. Braun
> One North Wacker Drive
> Suite 4200
> Chicago, IL 60606-2841
> Facsimile: 312-641-9530

CPA also agrees that Obligors shall be entitled to an accounting of the alleged amounts due at the time CPA provides notice of any Event of Default. No right or remedy is exclusive of any other provided herein or permitted by law or equity. All such rights and remedies shall be cumulative and may be enforced concurrently or individually from time to time.

Upon the occurrence of a default hereunder, (a) at the option of CPA, all unpaid amounts under this Agreement or under any other Obligations shall become immediately due and payable without demand, notice or legal process of any kind; (b) the amount of $22,702.92 for attorneys' fees and costs incurred by the law firm of Drinker Biddle & Reath LLP shall be added to the unpaid amounts and shall become immediately due and payable without demand, notice or legal process of any kind; (c) the accrued default interest of $105,501.07 (the difference between the 18% default rate and the prime plus 1% rate from September 2, 2005 to August 1, 2006 under the Note) shall be added to the unpaid amounts and shall become immediately due and payable without demand, notice or legal process of any kind; (d) CPA may, subject to the notice provision set forth above, exercise any and all rights and remedies granted to it by this Agreement

3

and the Note, or by any other agreement now or hereafter existing between CPA and Obligors; and (e) CPA may at its option, exercise from time to time any other rights and remedies available to it under applicable law.

Each Obligor hereby authorizes any attorney to appear for that Obligor in any court of record in the County of Cook, State of Illinois after this obligation becomes due and waive the issuance and service of process and confess a judgment against each Obligor in favor of the Holder for the amount due under this Agreement plus interest as provided herein together with the cost of suit plus attorney's fees. Each Obligor hereby expressly waives stay of execution and the exemption of personal property from levy and sale on any execution.

Any indebtedness from the Holder hereof or its affiliates to Obligors may be setoff, appropriated or otherwise applied to this Agreement or on any other Obligations, at any time, as well as after the maturity hereof. Obligors agree that, to the extent permitted by law, this Agreement (including any usury limitations applicable hereto) shall be construed in accordance with the laws of the State of Illinois and shall be binding upon Obligors and their successors and assigns. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under such law, such provision shall be severable, and be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Agreement.

To induce CPA to accept this Agreement, Obligors irrevocably agree that, subject to CPA's sole and absolute election, all actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement or the Note, shall be litigated in courts having situs within the County of Cook, State of Illinois. Obligors hereby consent and submit to the jurisdiction of any local, state or federal court located within said county and state. Obligors hereby waive any rights Obligors may have to transfer or change the venue of any litigation in accordance with this paragraph. OBLIGORS WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION HEREUNDER OR ARISING OUT OF CPA'S TRANSACTIONS WITH OBLIGORS.

As further inducement for CPA to accept this Agreement, Obligors further release, acquit and forever discharge CPA, its parent, subsidiary and affiliated corporations and their respective officers, directors, agents, employees, and their successors and assigns (collectively, the "Releasees") from all liabilities, claims demands, actions, or causes of action of any kind, if any, whether absolute or contingent, due or to become due, disputed or undisputed, liquidated or unliquidated, at law or in equity, that either Obligor now has or ever has had against the Releasees, whether arising under or in connections with the Note.

The Obligors, in executing this Agreement, do not rely on any inducements, promises, or representations made by CPA, with the exception of the consideration cited herein.

In the event of any default hereunder or after CPA has demanded payment in full, interest upon all outstanding indebtedness and unpaid amounts, whether under the Agreement or any

4

Obligation, shall then be charged at a rate equal to eighteen percent (18%) per annum, or at the highest rate permitted by applicable law, whichever is less, computed on the basis of a three hundred sixty (360) day year until all such indebtedness owing to Holder is paid in full. Obligors further agree that they will pay to the Holder forthwith on demand therefor, all costs, including reasonable attorneys' fees, incurred in enforcing this Agreement and the Note or the rights and remedies herein provided; and, together with any endorsers or guarantors, waives presentment, demand, notice of dishonor and protest, and consents to the release, with or without consideration, of any person or property liable for guaranteeing or securing this Agreement and the Note.

Neither this Agreement nor any provisions hereof may be changed, waived, discharged or terminated, nor may any consent to the departure from the terms hereof be given, orally (even if supported by new consideration), but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought. Any waiver or consent so given shall be effective only in the specific instance and for the specific purpose for which given.

Neither this Agreement nor CPA's forbearance hereunder shall be deemed a waiver of or consent to the defaults referenced herein or in the Note. The Obligors agree that such defaults shall not be deemed to have been waived, released or cured by virtue of CPA's agreement to forbear pursuant to the terms of this Agreement or the execution of the Agreement.

The Obligor agrees to keep all of the promises made in this Agreement.

THIS AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS LOAN.

Accepted and agreed to by:

**Shashi K. Tejpaul a/k/a S.K. Paul**          **Gail M. Duncan**

DATE: _8·8·06_          DATE: _8·8·06_

Accepted and agreed to by:

**Consumer Program Administrators, Inc.**

BY _____

TITLE: _President_

DATE: _8/9/06_

6

# EXHIBIT B

# PROMISSORY NOTE

$1,200,000

Date: June 15, 2004

FOR VALUE RECEIVED, Shashi K. Tejpaul aka S.K. Paul and Gail M. Duncan, **jointly and severally** (individually and collectively referred to herein as "Obligor") agree to pay to the order of Consumer Program Administrators, Inc. (hereinafter called "Lender"), the principal sum of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) with interest from the date hereof on the principal balance outstanding from time to time until this indebtedness ("Note") is paid in full, computed on the basis of a 360-day year for the actual number of days elapsed, at a percentage rate per annum equal to the Prime Rate of interest published from time to time in the Wall Street Journal plus 1%. Said principal, interest and any costs accrued hereunder, including any costs associated with the preparation or administration of this Note, shall be due and payable at the office of Lender, 1000 North Milwaukee Ave., Glenview, Illinois 60025, or at such other place as the Holder (as defined below) may in writing designate.

Payments on this Note shall be made as follows:

(i) Obligor shall pay or cause to be paid $100.00 for each mechanical repair agreement, extended warranty or service contract the Dealerships listed on Schedule 1 ("Dealerships") sell after the date of this Note until this Note is paid in full. These payments shall be applied first to accrued but unpaid interest and costs due under this Note, then to principal. Obligor shall cause the Dealerships to enter into amendments to the various agreements between the Dealerships and the appropriate parties so that the fees referred to in the preceding sentence are paid directly to Lender.

(ii) if not paid sooner, all unpaid costs, principal and interest shall be due and payable on May 31, 2009.

All payments on this Note shall be credited to Obligor's account upon the receipt of good funds and shall be applied first to any costs or charges due Lender under this Note then to interest accrued, and then to principal. Interest on the principal balance remaining from time to time unpaid shall continue to accrue at the rate aforesaid until this Note is paid in full. Obligor may at any time pay the entire principal sum or any part thereof, together with any interest accrued, without penalty.

As further consideration for Lender's loan to Obligor, Obligor hereby unconditionally and irrevocably guarantees payment when due of any amounts owed to Lender or Lender's affiliates by the Dealerships or to any of their successors or assigns, without the necessity of Lender or its affiliates first bringing legal action against any Dealership or any other party. Each Obligor shall indemnify and hold Lender, its affiliates and their officers, directors, employees and agents

harmless from all loss, cost, damage or expense, including attorney's fees, incurred by any of them and arising out of or in any way related to any of the transactions described herein, including but not limited to, the guarantee by any of the Dealerships of repayment of this Note and the assignment by any of the Dealerships of any fees to repay this Note. When used herein, "Obligation" means this Promissory Note, this guaranty, this indemnity and any other liabilities or obligations of Obligor to Lender or Lender's affiliates due or to become due, now existing or hereafter contracted, and however acquired by Lender or its affiliates. Lender may assign this Note and all related agreements to any affiliate of Lender and any assignee of this Note is sometimes referred to herein as "Holder." This Obligation shall survive Obligor's repayment of this Note.

Each Obligor agrees to pledge as security for performance of this Note any and all shares of any company that insures or reinsures obligations of any mechanical repair service contract business or guaranteed asset protection business sold by the Dealerships. Obligors shall pledge those shares immediately upon issuance and shall sign any agreements or documents which Lender reasonably deems necessary to perfect the pledge of the shares to Lender.

The occurrence of any one of the following events shall constitute a default by Obligor under this Note:

> (i) any failure to pay any amount on this Note or any other Obligation when due or breach of any other terms or conditions herein; or

> (ii) if any application or statement in respect hereof furnished to Lender by Obligor shall be found to be materially false and Lender has notified Obligor of such default; or

> (iii) upon the occurrence of a breach or default under an Agreement To Do Business between Obligor, Dealerships, and Resource Dealer Group, Inc. dated the same date herewith or any other instrument or documents related thereto (collectively, the "Loan Documents"); or

> (iv) the insolvency (however expressed or indicated) or the filing of a petition in bankruptcy, reorganization or for the adjustment of debts, for, by or against the Obligor or any Dealership; or

> (v) any of the Dealerships ceases to do business, or is sold, merged or dissolved, or if the majority of the outstanding shares or ownership interests of any Dealership is transferred; or

> (vi) upon request by Lender, the failure of Obligor or any Dealer to provide any financial statement or other information to Lender.

Upon the occurrence of a default hereunder, (a) at the option of Lender, all unpaid amounts under this Note or under any other Obligations shall become immediately due and payable without demand, notice or legal process of any kind; (b) Lender may, at its option,

without demand, notice or legal process of any kind, exercise any and all rights and remedies granted to it by this Note, or by any other agreement now or hereafter existing between Lender and Obligor; and (c) Lender may at its option, exercise from time to time any other rights and remedies available to it under applicable law.

Any indebtedness from the Holder hereof or its affiliates to Obligor may be setoff, appropriated or otherwise applied to this Note or on any other Obligations, at any time, as well as after the maturity hereof. Obligor agrees that, to the extent permitted by law, this Note (including any usury limitations applicable hereto) shall be construed in accordance with the laws of the State of Illinois and shall be binding upon Obligor and its successors and assigns. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be severable, and be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note. Obligor represents and warrants that the proceeds of this loan are to be used solely for business purposes.

To induce Lender to accept this Note, Obligor irrevocably agrees that, subject to Lender's sole and absolute election, all actions or proceedings in any way, manner or respect, arising out of or from or related to this Note, shall be litigated in courts having sites within the Counties of Cook or Lake, State of Illinois. Obligor hereby consents and submits to the jurisdiction of any local, state or federal court located within said county and state. Obligor hereby waives any rights Obligor may have to transfer or change the venue of any litigation in accordance with this paragraph. OBLIGOR WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION HEREUNDER OR ARISING OUT OF LENDER'S TRANSACTIONS WITH OBLIGOR.

In the event of any default hereunder or after Lender has demanded payment in full, interest upon all outstanding indebtedness, whether under the Note or any Obligation, shall then be charged at a rate equal to eighteen percent (18%) per annum, or at the highest rate permitted by applicable law, whichever is less, computed on the basis of a three hundred sixty (360) day year until all such indebtedness owing to Holder is paid in full. Obligor further agrees that it will pay to the Holder forthwith on demand therefor, all costs, including reasonable attorneys' fees, incurred in enforcing this Note or the rights and remedies herein provided; and, together with any endorsers or guarantors, waives presentment, demand, notice of dishonor and protest, and consents to the release, with or without consideration, of any person or property liable for guaranteeing or securing this Note.

The Obligor agrees to keep all of the promises made in this Note.

THIS NOTE AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS LOAN.

**OBLIGORS:**

_____
Shashi K. Tejpaul aka S.K. Paul


_____
Gail M. Duncan

## SCHEDULE I

### Dealerships

Jerome-Duncan, Inc.
8000 Ford Country Lane
Sterling Heights, MI 48313

Minority Enterprises, LLC
d/b/a Sterling Kia
10540 W. 8 Mile Rd
Ferndale, MI 48220

Minority Enterprises, LLC
d/b/a/ Sterling Hyundai
10540 W. 8 Mile Rd
Ferndale, MI 48220

Sterling Motors, LLC
d/b/a Sterling Mazda-Woodhaven
23955 Allen Road
Woodhaven, MI 48183

Sterling Motors, LLC
d/b/a Sterling Mazda
40552 Van Dyke
Sterling Heights, MI 48313

# EXHIBIT C



## the warranty group℠

### consumer program administrators, inc.

### NOTICE OF DEFAULT

September 17, 2007

**VIA FACSIMILE** (312) 641-9530

Sedgwick, Detert, Moran & Arnold, LLP
Attn: Scott D. Braun
One North Wacker Drive, Suite 4200
Chicago, IL 60606-2841

> Re: Default Under the Forbearance, Payment and Release Agreement
> Dated August 8, 2006 Between Consumer Program Administrators, Inc.
> and Shashi K. Tejpaul a/k/a S.K. Paul and Gail M. Duncan

Dear Mr. Braun:

This letter provides written notice of an Event of Default under the Forbearance, Payment and Release Agreement dated August 8, 2006 (the "Agreement"), between Consumer Program Administrators, Inc. ("CPA") and Shashi K. Tejpaul a/k/a S.K. Paul and Gail M. Duncan (collectively, "Obligors"). Specifically, Obligors have failed to pay amounts owed under the Agreement when due by failing to pay all unpaid costs, principal and interest on September 15, 2007.

Because an Event of Default has occurred, all unpaid costs, principal and interest are immediately due and payable to CPA. As of September 15, 2007, Obligors owe CPA $1,170,207.15 (consisting of principal ($1,161,085.47) and interest ($9,121.68)). Pursuant to the Agreement, Obligors also owe $22,702.92 for attorneys' fees and costs incurred by the law firm of Drinker Biddle & Reath LLP, accrued default interest of $105,501.07 (the difference between the 18% default rate and the prime plus 1% rate from September 2, 2005 to August 1, 2006 under the Note), and all other costs, including reasonable attorneys' fees, incurred in enforcing the Agreement and the Note or the rights and remedies therein provided.

Also pursuant to the Agreement, after the date of this demand for payment in full, interest upon all outstanding indebtedness and unpaid amounts, including without limitation the amounts set forth above, shall be charged at a rate equal to eighteen percent (18%) per annum, computed on the basis of a three-hundred-sixty (360) day year, until all such indebtedness owing to CPA is paid in full.

This notice is without prejudice to CPA's rights and remedies under the Agreement and applicable law, including without limitation the right to indemnification from all loss,

costs, damages, or expenses, including attorneys' fees, incurred by CPA or its affiliates and arising out of, or in any way related to, any of the transactions described in the Agreement. As set forth in the Agreement, CPA may pursue any remedies described in the Agreement if Obligors have failed to cure the Event of Default by making payment in full of all amounts owed within five (5) days of this notice. CPA expressly reserves its rights to exercise such remedies without further notice to Obligors to the extent provided by the Agreement and applicable law. Any discussions between CPA and Obligors regarding the Agreement or this notice shall not constitute a rescission of this notice or any waiver or forbearance of the exercise of CPA's rights and remedies under the Agreement and applicable law. CPA's receipt and application of one or more payments in an amount less than the amounts set forth above shall not serve to reinstate the Note or cure the default under the Agreement, but may be applied by CPA as a partial payment of amounts owed.

CONSUMER PROGRAM ADMINISTRATORS, INC.

By: _William J. Sparer_

William J. Sparer, Senior Counsel

WJS

cc:     Shashi K. Tejpaul/Gail Duncan (Via Facsimile 248-928-0866)

# EXHIBIT D

CONSUMER PROGRAM ADMINISTRATORS, )
INC., an Illinois corporation, )
                                   )
      Plaintiff, )
                                     )      No.    07 C _____
v.                                  )
                                     )
SHASHI K. TEJPAUL, a Michigan citizen, and )
GAIL M. DUNCAN, a Michigan citizen, )
                                     )
      Defendants. )

## AFFIDAVIT OF WILLIAM J. SPARER

I, William J. Sparer, Esq., declare under penalty of perjury as follows:

1.      My name is William J. Sparer. I am over eighteen years of age and competent to make this affidavit. I am currently employed as Senior Counsel for The Warranty Group, of which Consumer Program Administrators, Inc. ("Plaintiff" or "CPA") is an affiliate. I am authorized to, and in fact do, serve as counsel of CPA. I have personal knowledge of the facts set forth below.

2.      I am submitting this affidavit in support of CPA's Motion For Entry Of Judgment Under Count I (the "Motion"). I have read the Motion and CPA's Complaint, and the statements therein are true and correct, except as to matters therein to be on information and belief, and as to such matters I verily believe the same to be true.

3.      Pursuant to the Forbearance, Payment and Release Agreement ("Agreement") between CPA and Shashi K. Tejpaul ("Tejpaul") and Gail M. Duncan ("Duncan") (Tejpaul and Duncan are collectively referred to herein as "Obligors"), I am authorized, and I hereby do, directly and/or through my counsel Freeborn & Peters LLP, which is appearing on my behalf in this action, appear on behalf of Obligors in this Court after Obligors' obligation became due in order to: (a)

waive the issuance and service of process; and (b) confess that there is due from Obligors the amounts of: (a) $1,170,207.15 consisting of principal and interest owed under the Agreement as of September 15, 2007; (b) $22,702.92 for attorneys' fees and costs incurred by the law firm of Drinker Biddle & Reath LLP; and (c) and accrued default interest of $105,501.07 (the difference between the 18% default rate and the prime plus 1% rate from September 2, 2005 to August 1, 2006 under the Note). The total amount due from Obligors is $1,298,411.14.

4. On behalf of Obligors, I confess and agree that judgment may and should be entered against them without process for the total above and costs of suit (including attorneys' fees), and I hereby release and waive all rights of Obligors as set forth in, and authorized by, the Agreement.

5. Further affiant sayeth not.

Dated: September 24, 2007

_William J. Sparer_
William J. Sparer

SUBSCRIBED AND SWORN to
Before me this **24** day
of September, 2007.

_Gerard M. Duda_
Notary Public

OFFICIAL SEAL
GERARD M. DUDA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JUNE 12, 2010